LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY ET AL. *v.* W. H. McINTYRE COMPANY.

[No. 8,565. Filed May 28, 1915. Rehearing denied October 6, 1915. Transfer denied November 19, 1915.]

1. APPEAL.—*Review.*—*Ruling on Demurrer.*—In an acton against a railroad company for conversion by reason of the wrongful delivery of an automobile truck, where defendant's answers alleging matter in justification were probably insufficient as against a demurrer properly addressed thereto, the court did not err in overruling the demurrer to a reply to such answers, even though such reply was not a model pleading, where it contained sufficient averments to avoid the material allegations of such answers. p. 197.

2. CARRIERS.—*Carriage of Freight.*—*Wrongful Delivery.*—*Conversion.*—The delivery of freight without justification to a party other than the consignee is a wrongful conversion thereof; hence, under a bill of lading to the order of consignor with directions to notify a third person, the carrier, to avoid liability for delivery to such third person without the order or direction of consignor, must show justification for its act, and justification is not shown by the mere fact that the delivery was solely for inspection, especially where the bill of lading specifically provides against inspection. p. 198.

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

3. CONVERSION.—*Justification.*—*Question of Fact.*—Efforts of a carrier of freight to justify its act in delivering to a third person contrary to the provisions of the bill of lading, by showing waiver or ratification, presented questions for the jury, where the facts were in dispute or were such as to which reasonable minds might differ. p. 200.

4. CARRIERS.—*Carriage of Freight.*—*Conversion.*—*Evidence.*—Where an automobile truck was shipped to the order of consignor with instructions to notify a third person, evidence showing that on the arrival of the truck at the destination a representative of the firm through whom the order was placed with the consignor, together with a representative of such third person, removed the truck from the car in which it was shipped, and induced defendant's agent to permit its removal from the premises upon their statement that such agent would receive a release from consignor during the day, warranted a finding that there had been an actual delivery contrary to the terms of the bill of lading, and without justification on the theory of a waiver of such terms, since the representative of the firm through whom the order was placed did not claim to have authority to waive the requirements of the bill of lading. p. 201.

5. CARRIERS.—*Carriage of Freight.*—*Wrongful Delivery.*—*Evidence.*—Where an automobile truck was shipped subject to consignor's order with instructions to notify a third person of its arrival, and the carrier delivered the truck to such third person in violation of the terms of the bill of lading, whereupon the consignor filed a claim against the carrier for the value of the truck on the theory of a conversion, and the evidence showed that the truck was incomplete in some equipments which were later furnished by the agency through whom the truck was ordered from consignor, that both such agency and the consignor sent men to adjust the truck and consignor furnished repairs for broken and defective parts, that the truck, eventually proving to be unsatisfactory, was returned to the carrier, who notified the consignor that it held the property subject to its order, and that the consignor refused to accept same and insisted on its claim for conversion, the questions of whether consignor ratified the delivery, or whether the carrier was justified in making the delivery, so as to preclude recovery in an action for conversion, were for the jury and its finding was conclusive. p. 202.

6. CARRIERS.—*Carriage of Freight.*—*Wrongful Delivery.*—*Liability.*—Where an automobile truck was shipped to consignor's order with instructions to notify a third person of its arrival, the carrier was not relieved from liability for its act in delivering the truck to such third person contrary to the terms of the contract of shipment by the fact that the consignor sent agents to make repairs to the truck while it was in the hands of such third person, where it appeared that consignor, upon learning of the wrongful delivery, presented its claim against the carrier and continued to press same with no intention of releasing the carrier from liability. p. 204.

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

7. CARRIERS.—*Carriage of Freight.—Delivery.*—Where shipment was made to consignor's order under a bill of lading stipulating for notice to the buyer, for delivery only on presentation of the bill, and against inspection, the carrier was not authorized to deliver the property to the buyer for inspection without the authority or consent of the consignor.   p. 205.

8. CARRIERS.—*Carriage of Freight.—Wrongful Delivery.—Instructions.*—Where a carrier delivered an automobile truck to the buyer in violation of the bill of lading under which the property was shipped to consignor's order with instructions to notify the buyer, and which stipulated for the presentation of the bill of lading before delivery, and against the right of inspection, an instruction requested by the carrier, in an action against it for conversion because of such wrongful delivery, stating that since the contract of purchase did not provide the time of payment the same would become due upon delivery of the truck in good repair and running order, was properly refused, since it not only contradicted the stipulations of the bill of lading and stated no legal proposition to justify the delivery, but it also assumed facts not proved and was inapplicable to the evidence.   p. 205.

9. APPEAL.—*Review.—Refusal of Instructions.*—There is no reversible error in the refusal of instructions, where every element of the case is shown to have been fully covered and properly presented by the instructions given.   p. 206.

10. CONVERSION.—*Excessive Damages.—Review.*—In an action against a carrier for conversion through the wrongful delivery of an automobile truck, where there was evidence, though conflicting, to show that the truck was worth $712.50, together with other evidence properly for the consideration of the jury in determining the amount of recovery, a verdict for $700 was not such as to convince the court that the jury acted from prejudice, partiality or corruption, and therefore could not be disturbed on the ground that it was excessive.   p. 207.

From Steuben Circuit Court; *Frank M. Powers,* Judge.

Action by the W. H. McIntyre Company against the Lake Shore and Michigan Southern Railway Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Walter Olds, F. B. Carpenter* and *A. C. Wood,* for appellants.

*P. V. Hoffman* and *Brown & Carlin,* for appellee.
   VOL. 60—13

SHEA, C. J.—Appellee, a manufacturer of automobiles and automobile delivery trucks, at Auburn, Indiana, shipped over appellants' lines an automobile delivery truck from Auburn, Indiana, to Valparaiso, Indiana, which was consigned by bill of lading to appellee's order, notify Lowenstein & Sons at Valparaiso, and drew a sight draft on the latter for $712.50, with bill of lading attached, said bill of lading providing for delivery only on surrender of bill of lading. It is alleged in the complaint that delivery was made by appellants without payment of the draft, or surrender of the bill of lading, and recovery of the value of the truck is sought in this action as for a wrongful conversion of property. The material parts of the bill of lading, attached to and made part of the complaint read as follows:

"Order Bill of Lading—Original Agent's No. . . . . . Received, subject to the classifications and tariffs in effect on the date of issue of this original bill of lading at Auburn, Ind., from W. H. McIntyre Co., the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown) marked, consigned, and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof and which are agreed to by the shipper and ac-

MAY TERM, 1915.          195

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

cepted for himself and his assignees. The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is endorsed on this original bill of lading or given in writing by the shipper. * * * (Mail address—Not for purpose of delivery.) Consigned to order of W. H. McIntyre Co. Destination—Valparaiso; State of Ind., County of * * *. Notify Lowenstein & Sons at * * * ."

Appellants answered the complaint in seven paragraphs, the first a general denial, and appellee filed a reply in two paragraphs, the first a general denial. The court overruled appellants' demurrer to appellee's second paragraph of reply to the second, third and sixth paragraphs of appellants' answer. The paragraphs of answer to which the reply is addressed, allege, in substance, that Lowenstein & Sons had contracted with the Security Automobile Company of Chicago, for the truck; that the Security Automobile Company was agent of appellee and handled its autos; that Lowenstein & Sons ordered a truck from the Security Automobile Company, and it ordered the truck from appellee; that the contract for the truck required certain equipment which did not accompany the shipment; that the truck was not to be shipped with draft attached, but was to be delivered overland and inspected so as to know it would operate in accordance with the contract; that the Security Automobile Company and Lowenstein & Sons demanded inspection of the wagon before paying the draft; that they were entitled to an inspection of it, and the only way an inspection could be made to de-

termine whether it was in accordance with the contract, was by putting the same together and testing and ascertaining whether it was in running order, and would carry the load guaranteed; that appellants allowed the Security Automobile Company, and Lowenstein & Sons to take it from the car for inspection, and they ascertained it did not comply with the contract, and could not, and would not run and be operated; that while it was being so tested appellee furnished its own employes to repair same, had work done upon it for the purpose of endeavoring to make it in accordance with the contract of purchase, and took parts of said motor delivery wagon back, and has ever since retained them, and furnished new parts to the same, acquiescing in and consenting to the inspection of the same, and testing of it, and, failing to complete it in accordance with the contract, it was returned to appellants and held subject to appellee's order.

The second paragraph of appellee's reply to which appellants' demurrer was overruled, alleges that the Security Automobile Company of Chicago, was engaged in the purchase and sale of automobiles. Prior to the shipment of the truck, it entered into a written contract to furnish Lowenstein & Sons a truck, the terms of which contract were not known to appellee, and to fill the order, it ordered of appellee the truck in question by written contract, a copy of which is set out with the reply. It then sets out the terms of the bill of lading, with reference to delivery, and the delivering of it in violation of the terms, and thereupon appellee demanded payment; that while the motor truck was in the possession of the parties under such wrongful delivery, and after appellee had filed its claim with appellants for the value of the truck, and was duly prosecuting said claim, it did, upon one or two occasions,

MAY TERM, 1915.     197

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

upon the request of the Security Automobile Company and Lowenstein & Sons send mechanics from its shops to repair and replace broken parts of the truck, as the special warranty· in the contract between it and the Security Automobile Company required it to do, and such parts were taken from the factory to repair the machine, and the broken parts returned for inspection to enable appellee to determine if it was liable under such warranty; that such repairs were made without any intention on appellee's part of waiving or abandoning its claim against appellants for the wrongful delivery of the motor wagon, of which intention appellants had due notice during all of said time; that whatever was done by appellee in making such repairs ensued to the benefit of appellants in the way of being an effort to get Lowenstein & Sons to accept said wagon and pay for it and relieve appellants from liability upon said wrongful delivery.

Over appellants' motion for a new trial judgment was rendered in appellee's favor for $700.

The errors assigned and argued by appellants are the overruling of their demurrer to the second paragraph of reply addressed to the second, third and sixth paragraphs of appellants' answer, and the overruling of their motion for a new trial.

It is earnestly argued that the court erred in overruling appellants' demurrer to appellee's second paragraph of reply. The second, third and sixth paragraphs of appellants' answer to the complaint, to which this paragraph of reply is addressed, are based upon the theory that Lowenstein & Sons had the right of inspection in the first instance; that if, upon inspection, they found the machine to be unsatisfactory, they might return it. We doubt whether these paragraphs of answer were sufficient as against a demurrer properly addressed there-

198 APPELLATE COURT OF INDIANA,

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

to. At all events, the second paragraph of reply thereto, while by no means a model pleading, contained sufficient averments to avoid the material allegations of said paragraphs of answer.

The determination of a few questions will dispose of the many questions ably presented by counsel in their briefs in support of the contention that 2. the court erred in overruling the motion for a new trial. The theory upon which the judgment and verdict rests is that there was a wrongful conversion of the property by appellants, and therefore they are liable for the value thereof. The bill of lading heretofore referred to contains the provision that "The surrender of this bill of lading properly indorsed, shall be required before delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless permission is endorsed on this original bill of lading, or given in writing by the shipper * * * notify Lowenstein & Sons." While there is some conflict in the decided cases, which we do not attempt to reconcile, the great weight of authority sustains the doctrine that the delivery of property without justification, to a party other than the consignee, is a wrongful conversion thereof. The decisions of our own court, as well as many others adhere to this principle. *Merchants, etc., Co.* v. *Merriam* (1887), 111 Ind. 5, 11 N. E. 954; *Cleveland, etc., R. Co.* v. *Wright* (1900), 25 Ind. App. 525, 58 N. E. 559; *Chicago, etc., R. Co.* v. *Fifth Nat. Bank* (1901), 26 Ind. App. 600, 605, 59 N. E. 43; 1 Hutchinson, Carriers (3d ed.) §177; *North Pennsylvania R. Co.* v. *Commercial Nat. Bank* (1887), 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; *Merchants Bank* v. *Union R., etc., Co.* (1877), 69 N. Y. 373; *Dows* v. *National Exchange Bank* (1875), 91 U. S. 618, 23 L. Ed. 214; *Hieskell* v. *Farmers, etc., Nat. Bank* (1879), 89 Pa.

MAY TERM, 1915. 199

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

St. 155, 33 Am. Rep. 745; *Southern R. Co.* v. *Webb* (1904), 143 Ala. 304, 313, 39 South. 262, 111 Am. St. 45, 5 Ann. Cas. 97; *Watson* v. *Hoosac Tunnel Line Co.* (1883), 13 Mo. App. 263; *Libby* v. *Ingalls* (1878), 124 Mass. 503; 6 Cyc 470.

In 4 Elliott, Railroads §1427 this language is found: "A direction in a bill of lading to consignor's order to 'notify' some one else, does not warrant the carrier in delivering the property to the person so to be notified without the production of the bill of lading. The use of the term 'notify' shows that the party to be notified was not intended as the consignee, but was simply to be advised of the arrival of the goods. The fact that a bill of lading is made out to the consignor's order makes this still plainer. Indeed, it has been held that such a contract is so plain and unambiguous that a custom in a certain city to deliver property under similar bills of lading to the person to be notified can not be shown." Citing numerous authorities. The principle is also well supported in the following cases and notes thereto: *Richmond, etc., R. Co.* v. *Payne* (1890), 6 L. R. A. 849, 853; *Pacific Express Co.* v. *Shearer* (1896), 37 L. R. A. 177; *Nebraska Meal Mills* v. *St. Louis, etc., R. Co.* (1897), 38 L. R. A. 358. So that we conclude that if there was a delivery to a person other than the consignee, which is undisputed in this case, in order to escape liability the appellants must justify their acts. The following cases sustain this principle. *American Express Co.* v. *Greenhalgh* (1875), 80 Ill. 68; *Gilkinson* v. *The Scotland* (1859), 14 La. Ann. 417; *Wilcox* v. *Chicago, etc., R. Co.* (1877), 24 Minn. 269; *Wolfe* v. *Missouri Pac. R. Co.* (1888), 97 Mo. 473; 11 S. W. 49, 10 Am. St. 331, 3 L. R. A. 539; *Atchison, etc., R. Co.* v. *Schriver* (1906), 72 Kan. 550, 84 Pac. 119, 4 L. R.

200          APPELLATE COURT OF INDIANA,

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

A. (N. S.) 1056; *Libby* v. *Ingalls, supra*; *National Bank* v. *Atlanta, etc., R. Co.* (1886), 25 S. C. 216.

In order to justify their acts, appellants earnestly argue that there was not a delivery of the property within the meaning of the law, but that an opportunity was simply given for an inspection of the truck by the party to whom notice of its arrival at Valparaiso was directed to be given; that it was necessary, in order to properly inspect said machine to remove it from the premises of appellant, and test it by use. It must be remembered that Lowenstein & Sons, to whom said notice was to be sent, were not the consignees. It has been held that the carrier was not authorized to deliver property to the person to whom notice was to be given, contrary to the terms of the bill of lading, and a delivery so made, is a wrongful conversion of property, unless justified. We see no reason why the same rule should not apply when parties are given the privilege of inspection, where it is especially prohibited by the bill of lading, as in this case. Our attention has been called to no case holding a contrary doctrine, and a diligent investigation has disclosed none. Many cases are cited by appellants' learned counsel which hold that privilege of inspection given by the carrier to the consignee named in the bill of lading, was not wrongful conversion, but none of them go so far as to hold that said right to inspect is given the party to be notified, who is not the consignee, where the bill of lading denies the right of inspection, even to the consignee, unless he fulfills its requirements. Efforts to justify

3. appellants' acts by showing, or attempting to show, waiver or ratification, where the facts are in dispute, or where reasonable minds might differ, present questions of fact to be determined by the jury.

The facts in this case, as we view them, warrant a finding that there was an actual delivery. The evidence discloses that after the truck arrived at Valparaiso, a representative of the Security Automobile Company, together with one of Lowenstein & Sons went to the station and removed the truck from appellants' car, in which it was shipped, and induced the agent of appellants to permit them to remove the truck from the premises of appellants upon the statement made, as he testifies, that he would receive a release from appellee during the day; that it had been arranged for by letter or phone, so that the delivery was not made for the purpose of inspection, but upon the theory that it had been released by the owner and consignee. This evidence is not seriously controverted.

It is further argued that the employe of the Security Automobile Company had a right to direct the release of the truck, because the Security Automobile Company was the general agent of appellee, with power to so direct, and that therefore there was an informal waiver of the terms of the bill of lading by the agent of appellee, who had such authority. So far as the evidence in this case shows, said agent of the Security Automobile Company did not pretend to have such right, but as heretofore stated, based his request for release of the truck wholly upon the truth of the statement of the Security Automobile Company that it had been released as above stated. These facts uphold a finding that the truck was delivered without sufficient justification in so far as the question of waiver is presented. It is held in the case of *Sawyer* v. *Chicago, etc., R. Co.* (1868), 22 Wis. 403, 99 Am. Dec. 49, that when goods are shipped to the order of the consignor, the carrier will not be justified in delivering them without such order, by the fact that one of

202        APPELLATE COURT OF INDIANA,

Lake Shore, etc., R. Co. v. W. H. McIntyre Co.—60 Ind. App. 191.

the employes of the shipper said the property was for a certain person. See, also, *Wilson Sewing Mach. Co.* v. *Louisville, etc., R. Co.* (1879), 71 Mo. 203; *Pennsylvania R. Co.* v. *Stern* (1888), 119 Pa. St. 24, 12 Atl. 756, 4 Am. St. 626.

It is also earnestly insisted that appellee ratified the delivery to Lowenstein & Sons by subsequent conduct; that a representative was sent from appellee's shops at Auburn, to adjust certain parts of the oiling device and supply certain omitted parts, as well as new parts for the engine, which were broken by the demonstrator. A brief statement of the facts disclosed by the evidence will throw some light on the questions of waiver and ratification. Appellee was engaged in the manufacture of motor cars at Auburn, Indiana. The Security Automobile Company was a corporation engaged in selling and distributing automobiles with its place of business at Chicago. It is claimed by appellants that the Security Automobile Company was the general agent of appellee in the sale of cars. This is denied by appellee. The Security Automobile Company negotiated the sale of an auto truck or delivery wagon to Lowenstein & Sons, at Valparaiso, for the sum of $950, which truck was ordered by the Security Automobile Company from appellee, to be delivered, it is claimed, overland at Valparaiso. The truck was shipped by freight over appellants' railroad, the Lake Shore and Michigan Southern being the initial carrier, consigned to appellee. A sight draft was attached to the bill of lading, which contained directions that the truck should not be delivered or inspected without presentation of bill of lading, or release in writing. The agent of appellant, the Chicago and St. Louis Railroad Company, at Valparaiso, the final carrier, was induced by representations made to him by Low-

enstein & Sons and an employe of the Security
Automobile Company, to turn the truck over to
them without presentation of bill of lading, or re-
lease.    On June 1, 1910, immediately upon dis-
covering that the truck had been so turned over
without presentation of bill of lading, appellee filed
claim against appellants for the value of the car,
charging it with wrongful conversion, and has con-
tinually insisted on settlement from appellants,
as the evidence discloses.    The truck was incom-
plete in some equipments about which there was no
dispute.    Other parts claimed to be defective or in-
complete, appellee claims he was not obliged to
furnish.    These parts were actually furnished by the
Security Automobile Company.    The contract be-
tween Lowenstein & Sons and the Security Auto-
mobile Company, and the contract between ap-
pellee and the Security Automobile Company are
not identical in some details, but for our purpose
we need not give consideration thereto except that
both contracts contained a special limited warranty
in the same language.    By the terms of the warranty
contained in the contract between appellee W. H.
McIntyre Company and the Security Automobile
Company, the former was required to furnish and
replace all defective parts within ninety days from
date of shipment.    Both appellee and the Security
Automobile Company sent men to Valparaiso to
adjust it, and appellee furnished various parts of the
truck from its factory, to supply parts omitted or
parts broken in attempts to use it, all, it is claimed
by appellee, at the request of Lowenstein & Sons, as
well as appellee, and because of the fact that by the
terms of the contract of sale appellee was required
to supply all defective parts within ninety days
after shipment.    The truck was unsatisfactory, and
after several weeks Lowenstein & Sons returned it to

204 APPELLATE COURT OF INDIANA,

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

appellants, who notified appellee that they held it subject to its order. Appellee refused to accept the truck, and insisted upon its claim for wrongful conversion, and proceeded to file this suit. Whether upon these facts appellants were justified in delivering the truck as stated, was properly submitted to the jury, and decided adversely to appellants. This court can not decide otherwise as matter of law.

It is argued that the court erred in giving to the jury instruction No. 4 requested by appellee. This instruction reads as follows: "If you find from the evidence that after the delivery wagon was in the possession of Lowenstein & Sons, the plaintiff did send such mechanics to Valparaiso, at the request of Lowenstein & Sons, or the Security Automobile Company, or its agents, to make repairs upon said machine in order to induce said Lowenstein & Sons to accept such machine and pay for it, and that such repairs were made and broken parts returned to factory, such acts of plaintiff would not alone in and of themselves be sufficient to release the defendants from any wrongful delivery, if the plaintiff, as soon as it discovered such wrongful delivery, made claim upon defendants for the value of such machine because of such wrongful delivery, and kept on pressing its claim against defendants and without at any time intending to release defendants from such claim." We see no objection to this instruction as it clearly states the fact that if appellee sent its man to make needed repairs and adjustments in the truck at the request of Lowenstein & Sons, that was not alone sufficient to release defendants from wrongful delivery, if as soon as appellee discovered the wrongful delivery, its claim against appellants was presented and pressed continuously with no intention of releasing said defendants from liability. There are

MAY TERM, 1915.                205

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

other elements which enter into the consideration of the question. This states the law as the court understands it.

Instruction No. 5 given at appellee's request and objected to, reads as follows: "Under the terms of the bill of lading under which such delivery wagon was shipped, the defendants were not authorized to deliver such wagon to Lowenstein & Sons for inspection without the production of the bill of lading with such permission endorsed upon it or without written authority from the plaintiff, or without plaintiff's consent." This instruction states the law correctly, following the authorities hereinbefore cited.

Instructions Nos. 6 and 11 tendered by appellee also go to the question of inspection and delivery, and are in harmony with the law as herein announced. No error was committed in giving them to the jury.

Error is also predicated upon the refusal of the court to give instruction No. 5 requested by appellant. This instruction contains the following language; "the order and contract of purchase not providing the time of payment, the payment would become due and payable upon the delivery of the motor delivery wagon in good repair and running order." This statement in the instruction is in contradiction of the stipulations of the bill of lading, and the abstract proposition of law stated could not justify the delivery of the property in violation of its terms. It is also objectionable because it incorrectly assumes that the Security Automobile Company was entitled to a part of the $712.50, for which amount the draft was drawn, as commission, whereas the evidence shows that the list price of the car was $950, and that the Security Automobile Company was entitled to twenty-five per

cent of that amount for commission. Twenty-five per cent of that amount would be $237.50, which, deducted from $950, leaves the exact amount, to wit, $712.50, due appellee for said car, in which the Security Automobile Company had no interest. It is also objectionable for the reason that it is not applicable to the evidence, as the representative of the Security Automobile Company at the time the car was turned over to Mr. Lowenstein and himself made no representation that he was the agent for appellee, or had any authority to release the truck, and the truck was not released upon that theory. No error was committed in refusal to give this instruction.

Instructions Nos. 14 and 25 are based upon the theory that the purchaser had the right of inspection, notwithstanding the terms of the bill of lading, and are therefore erroneous and were rightly refused. No harmful error can be predicated on the refusal of the court to give instructions Nos. 17, 18 and 19 tendered by appellants, which went to the question of special warranty. Instruction No. 21 tendered by appellants and refused by the court reads as follows: "The taking possession of parts of the motor vehicle delivery wagon by the plaintiff after the delivery of the same by the defendants to the Security Automobile Company, or to Lowenstein & Sons, and retaining the same by the plaintiff would constitute a ratification of the delivery by the defendants, and if you find such to be the facts, then there can be no recovery by the plaintiff." This instruction goes to the question of ratification. This branch of the case was fully covered by instruction No. 8 tendered by appellants, and given by the court, therefore no error can be predicated on the refusal to give this instruction. An examination of the in-

Lake Shore, etc., R. Co. *v.* W. H. McIntyre Co.—60 Ind. App. 191.

structions given by the court will disclose that every element of the case was fully covered and properly presented to the jury, so that no error can be predicated upon the refusal to give any of the instructions complained of.

It is further argued that the damages awarded are excessive. There was evidence that the car was worth $712.50. There was sharp conflict in the evidence upon this proposition. Evidence was heard as to the return of certain parts, of new parts being attached to the machine, and parts that were broken being supplied, and that when so repaired and adjusted, it was still unsatisfactory. All these facts were for the consideration of the jury in determining the amount of recovery. Under the well-settled rule that a verdict will not be set aside on the ground that the damages awarded are excessive, where the amount is not such as to induce the court to believe that the jury acted from prejudice, partiality or corruption, we can not say that the amount of recovery was excessive. *Joseph E. Lay Co.* v. *Mendenhall* (1913), 54 Ind. App. 342, 348, 102 N. E. 974. It would needlessly lengthen this opinion to consider other incidental and collateral questions ably argued in appellants' brief. It is sufficient to say that we have examined them and find no error which would warrant this court in reversing the judgment below. Judgment affirmed.

NOTE.—Reported in 108 N. E. 978. Liability of carrier for delivery of freight to wrong person, see 9 Am. St. 511; 5 Ann. Cas. 100. See, also, under (1) 31 Cyc 338; (2, 6) 6 Cyc 470; (3) 38 Cyc 2107; (8) 38 Cyc 1617, 1657; (9) 38 Cyc 1711; (10) 3 Cyc 380, 381.